FILED
JAMES BONINI
CLERK

2011 MAR 10 P 12: 46

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LAWRENCE PAGLIONI, and BETH PAGLIONI, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> OCWEN LOAN SERVICING, LLC, <br><br> Defendant. | Case No: **2:11 cv 0215** <br><br> **CLASS ACTION COMPLAINT** <br> MAGISTRATE JUDGE KING <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Lawrence and Beth Paglioni ("Mr. and Mrs. Paglioni" or "Plaintiffs"), individually and on behalf of all persons similarly situated, hereby sue Defendant Ocwen Loan Servicing, LLC ("Ocwen"), and state as follows:

### INTRODUCTION

1. At all times relevant hereto, Mr. and Mrs. Paglioni are among the thousands of homeowners who, even after living up to their end of the bargain, have not had their loans permanently modified, as they were promised by their mortgage servicing company, Ocwen.

2. Mr. and Mrs. Paglioni bring this suit on behalf of themselves, and a class of similarly situated homeowners to challenge the failure of Ocwen to honor agreements with borrowers to permanently modify mortgages under Ocwen's loan modification programs.

3. Ocwen entered into a loan modification agreement with Mr. and Mrs. Paglioni. The Paglioni's agreement, and on information and belief each and every loan modification of Ocwen's, promises that if the borrower complies with its terms, then the borrower will receive a permanent mortgage modification.

4. Mr. and Mrs. Paglioni have complied with the loan modification agreement by submitting the required documentation, and making on-time payments they were required to pay under the loan modification agreement. Despite Mr. and Mrs. Paglioni compliance with the loan modification agreement's terms, Ocwen has refused to permanently modify the Paglionis' loan as it was required to do under the loan modification agreement.

5. Ocwen has similarly breached numerous other loan modification agreements. As a result, Mr. and Mrs. Paglioni seek damages from Ocwen, and an end to its unlawful practices.

## THE PARTIES

6. Plaintiffs Lawrence and Beth Paglioni are individuals who reside at 5800 Leven Links Court, Dublin, Ohio 43017. During the relevant time period, Ocwen serviced their mortgage loan.

7. Defendant Ocwen Loan Servicing, LLC is a mortgage servicer with its principal place of business at 1661 Worthington Road, West Palm Beach, FL 33409. Ocwen regularly does business in Ohio and according to its corporate filings, is one of the largest servicers of "subprime residential mortgage loans."[1]

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, because the

---

[1] Ocwen 10k Filing. Available at http://moneycentral.msn.com/investor/sec/filing.asp?symbol=US:OCN

proposed class contains more than 100 members, the aggregate amount in controversy exceeds FIVE MILLION DOLLARS ($5,000,000.00) and at least one (1) member of the class is a citizen of a state different from Ocwen.

9. This Court has personal jurisdiction over Owen because Ocwen conducts substantial business in Ohio, and this lawsuit arises out of acts and/or omissions which occurred in Ohio.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Ocwen conducts business in the State of Ohio, the acts and/or omissions which gave rise to this lawsuit occurred in Ohio, and the named Plaintiffs reside in Ohio.

## SUBSTANTIVE FACTUAL ALLEGATIONS

### *Plaintiff's Personal Experience*

11. Plaintiffs Lawrence and Beth Paglioni bought their home in September 2006.

12. Mr. and Mrs. Paglioni's mortgage loan is serviced by Ocwen, and in the recent economic downturn, Mr. and Mrs. Paglioni began experiencing financial hardship.

13. Ocwen determined that Mr. and Mrs. Paglioni were eligible for a "Streamlined Loan Modification" that would lower their monthly mortgage payments.

14. By letter dated September 20, 2010, Ocwen offered Mr. and Mrs. Paglioni a loan modification. A copy of that letter, as well as the accompanying loan modification agreement and offer, are attached hereto as **Exhibit A.**[2]

15. Mr. and Mrs. Paglioni timely accepted the offer by returning the executed loan modification agreement and the required payments to Ocwen. The loan modification agreement

---

[2] The signatures and social security numbers of Mr. and Mrs. Paglioni have been redacted from the bottom of pages 1 and 2 of Exhibit A.

specified that Mr. and Mrs. Paglioni would need to make timely monthly mortgage payments of FOUR THOUSAND FIVE HUNDRED THIRTY-TWO DOLLARS AND FORTY-EIGHT CENTS ($4,532.48) for three (3) months, starting on October 1, 2010 (this was termed the "Trial Period").

16. The Loan Modification Agreement provides: "If you successfully complete the Trial Period, your loan will be modified pursuant to the terms of this Agreement (the "Modification"), and your Note will become current and not in default."

17. Mr. and Mrs. Paglioni timely made each of the Trial Period payments described in the loan modification agreement. Mr. and Mrs. Paglioni also complied with each and every other obligation required of them under the loan modification agreement.

18. Mr. and Mrs. Paglioni also timely made their January payment at the loan modification agreement amount of THREE THOUSAND TWO HUNDRED ELEVEN DOLLARS AND EIGHTY-ONE CENTS ($3,211.81). However, despite the Paglionis' compliance, Ocwen has denied them a permanent modification.

19. Therefore, in stark breach of the loan modification agreement, and despite Mr. and Mrs. Paglioni's complete compliance with all of its material terms, Ocwen has failed to permanently modify Mr. and Mrs. Paglioni's mortgage loan.

20. However, Ocwen has conveniently continued to cash the checks that Mr. and Mrs. Paglioni have sent to it in compliance with the loan modification agreement.

### *Borrower Frustration*

21. Mr. and Mrs. Paglioni are not the only homeowners to suffer because of Ocwen's mishandling of loan modification agreements. A small sampling of some of online comments by

borrowers who have their mortgage loans serviced by Ocwen gives insight into the scope of the problem and the similarity of the class members' experience:

- "Ocwen is one of the MOST frustrating companies I have EVER dealt with. They purchased our home loan from the original company a few years ago and we have had nothing but major headaches since then. We have dealt with them for over two years trying to get a loan modification agreement straightened out because they actively try to create problems with it... "losing" documents, changing terms after-the-fact, ignoring dates when it is advantageous for them, feigning ignorance of documented telephone conversations, taking months to "research" questions/requests for information." [3]

- "My husband and I recently qualified for a loan modification with Ocwen Mortgage Company… In order to qualify we had to make 3 trial period payments of 1,688.15… We made all three of the payments on time. We were then sent the HAMP modification documents. We had to sign them have them notarized and returned to Ocwen by 3/25/10. We performed these tasks and received a letter dated 4/5/10. Attached to the letter were the original HAMP loan modification documents we signed, stamped by Ocwen advising us that our loan modification was received and in effect as of 4/1/10… July 28th, 2010 I received a letter from the research dept. at Ocwen stating I had requested that the loan modification be removed and I now owed Ocwen over $5,512.00. I was out of town 7/22/10 to 8/15/10 when this letter arrived. On 8/13/10 my Notice of Default arrived as well. I contacted Ocwen on 8/16/10 and advised them I was not in default, I was now supposed to be under the In-Home Modification Plan and at NO time did I refuse a modification plan… I know Ocwen is not handling this situation properly. I know I have made all the payments properly… After reading all of the complaints against Ocwen we all need to find out who to file a complaint with and have Ocwen divested and closed. These people are unbelievable." [4]

- "After reading all the complaints about Ocwen, I can relate because everyone's story is exactly the same as mine. I am trying to modify my mortgage for months now. I have faxed and emailed the same docs too many times to count with customer service telling me they have not received them… VERY FRUSTRATING TO SAY THE LEAST! These idiots are screwing with your home and could care less… Something needs to be done and we should start a class action lawsuit. If anyone has any ideas please contact me. HELP!" [5]

---

[3] http://www.complaintsboard.com/complaints/ocwen-loan-servicing-c169943.html
[4] http://ocwen.pissedconsumer.com/ocwen-s-false-fraudulent-loan-modification-practices-20100821195042.html
[5] http://www.complaintsboard.com/complaints/ocwen-loan-servicing-c322491.html

- Our loan company sold out to Ocwen and now it's been nothing but trouble. We are trying to get a loan modification and get nothing but the same paperwork over and over to keep filling out even though we have sent them in numerous times. We were also told that we had a missing payment from when we were with our old company, which we did not and had to send in proof OVER and OVER." [6]

- "I called Ocwen to inform them of my situation. They told me that I needed to resubmit my application for hardship ... They said if for some reason that I wasn't approved for the application I would be contacted via email or best contact method. Well surprise, surprise 2 months go by and no contact has been made. I get a foreclosure papers in the mail from Ocwen telling me my home is now being moved to foreclosure status. I call back in to Ocwen and they tell me my application was denied 45 days ago... On January 18th, 2010 I got a new mortgage statement and I see where they have reset my loans and started me on a trial payment plan. On Tuesday February 2nd, 2010 Ocwen auctioned off my home and it was sold. Hello! How can they foreclose when I have already made the first payment... Why is Ocwen doing this to their customers?... Ocwen must be stopped." [7]

- We were offered and agreed to a loan modification from Ocwen signed and dated in June 29, 2010. We sent in the down payment/first payment at the end of June per our modification agreement. On july 16 we received a letter from a local attorney stating that Ocwen had referred our home loan to them for foreclosure for a default on the loan... We made our Aug. mortgage payment over the phone in Aug. 2010 and it was accepted. We made our payment in the form of a personal check for the amount due according to the modification in September. They sent the check back claiming it wasn't enough to satisfy the default. We called Ocwen and the claimed that we did not have a loan modification with them. My husband again told them that we have in our possession a loan modification agreement with them. They conveniently found our modification agreement in a matter of seconds after we gave them that information... About two weeks later, my husband received a call from their collections department stating that they were trying to collect a debt and that the September payment had been rejected again. It was the collections department again having no knowledge of the modification... Ocwen is foreclosing on a home that they have no legal right to as we are not delinquent on our home modification." [8]

---

[6] http://ocwen.pissedconsumer.com/nothing-but-a-total-run-around-20100827195997.html
[7] http://www.complaintsboard.com/complaints/ocwen-loan-servicing-c311065.html
[8] http://www.complaintsboard.com/complaints/ocwen-loan-servicing-llc-c387870.html

## CLASS ACTION ALLEGATIONS

22. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of themselves and all others similarly situated as members of the following class (hereinafter "Class"):

> All homeowners whose loans have been serviced by Ocwen and who have complied with their obligations under their loan modification agreements, but who have either not yet received a permanent mortgage modification or who have been affirmatively denied such modification.

23. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or by amended complaint. Specifically excluded from the proposed Class is Ocwen, its officers, directors, agents, trustees, affiliates, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by it, and its heirs, successors, or other persons or entities related to or affiliated with Ocwen and/or its officers and/or directors, or any of them; any Judge assigned to this action, and any member of the Judge's immediate family.

24. ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Ocwen. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class encompasses many thousands of individuals whose identities can be readily ascertained from Ocwen's books and records. The true number of Class members is known by Ocwen, however, and thus, may be notified of the pendency of this action by first class mail, by electronic mail, and/or by published notice.

25. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- The nature, scope and operation of Ocwen's obligations to homeowners under uniform loan modification agreements;
- Whether Ocwen's timely receipt of an executed loan modification agreement, along with any supporting documentation and timely monthly trial period payments, creates a binding contract or otherwise legally obligates Ocwen to grant Class members a permanent mortgage modification;
- Whether Ocwen's failure to provide permanent mortgage modifications in these circumstances amounts to a breach of contract;
- Whether Ocwen's failure to provide permanent mortgage modifications in these circumstances amounts to a breach of quasi-contract, or promissory estoppel;
- Whether Ocwen must pay damages;
- What the proper measure of damages is; and
- Whether class members are entitle to injunctive relief, and if so, what it should be.

26. ***Typicality.*** The claims of the individual Plaintiffs are typical of the claims of the Class and do not conflict with interests of other members of the Class in that both the Plaintiffs and the other members of the Class were subject to the same conduct, signed materially the same

loan modification agreement, complied with the terms of those loan modification agreements, yet were met with the same failure to provide a permanent modification.

27. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and complex state and federal foreclosure litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

28. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Ocwen. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

29. In the alternative, the Class may also be certified because:

- the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct;

- the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

- Ocwen has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

30. This putative class action meets the requirements of both Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

31. Ocwen has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### COUNT I

### Breach of Contract

32. Plaintiffs hereby incorporate by reference Paragraphs 1 through 31, as though fully set forth herein.

33. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

34. As described above, the loan modification agreement sent by Ocwen to Plaintiffs constitutes a valid offer.

35. By executing the loan modification agreement and returning it to Ocwen along with the supporting documentation and payment, Plaintiffs accepted Ocwen's offer.

36. Alternatively, Plaintiffs' return of the loan modification agreement constitutes an offer. Acceptance of this offer occurred when Ocwen accepted Plaintiffs' trial period payments, or alternatively, when Ocwen or one of its agents signed the Loan Modification Agreement.

37. Plaintiffs' trial period payments to Ocwen constitute consideration. By making those payments, Plaintiffs gave up the ability to pursue other means of saving their home and Ocwen received payments it would not have had.

38. Plaintiffs and Ocwen thereby formed a valid contract.

39. By failing to grant Plaintiffs a permanent mortgage modification, Ocwen breached that contract.

40. Plaintiffs remain ready, willing and able to perform under the contract by continuing to make payments under the loan modification agreement.

41. Plaintiffs have suffered harm and are threatened with additional harm from Ocwen's breach. By making trial period payments both during and after the trial period, Plaintiffs forewent other remedies that might have been pursued to save their home. On information and belief, Plaintiffs and other putative Class members have suffered additional harm in the form of foreclosure activity against their homes. Last, members of the putative Class have been living in a state of stressful anxiety because of the unjustifiable limbo in which Ocwen has placed them.

## COUNT II

### Promissory Estoppel, in the alternative

42. Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein, except for those allegations in Count I, above.

43. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

44. Ocwen, by way of its loan modification agreement, made a representation to Plaintiffs that if they returned the loan modification agreement executed and with supporting documentation, and made their three (3) trial period payments, they would receive a permanent mortgage loan modification.

45. Ocwen's loan modification agreement was intended to induce Plaintiffs to rely on it and make monthly trial period payments.

46. Plaintiffs did indeed rely on Ocwen's representation, and submitted trial period payments.

47. Given the language of the loan modification agreement, Plaintiffs' reliance was reasonable.

48. Plaintiffs' reliance was to their detriment. Plaintiffs have yet to receive a permanent mortgage modification; indeed, such permanent modification was unjustly denied. By making trial period payments both during and after the trial period, Plaintiffs forewent other remedies that might have been pursued to save their home.

## COUNT III

### Injunction, in the alternative

49. Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein, except for those allegations in Counts I and II, above.

50. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

51. As stated herein, Ocwen failed to honor its agreement to provide permanent loan modifications to those who have complied with their obligations. As a result, Ocwen continues to ignore its responsibility to deliver on its promise to permanently modify Plaintiffs' and the Class' mortgage loans.

52. If Ocwen is permitted to continue its conduct in connection with its modification process, Plaintiffs and Class members will be irreparably harmed. It would necessitate a separate action by Plaintiffs and each Class member for damages of each act, and would subject Plaintiffs, each Class member, Ocwen, and this Court to expense, annoyance, and inconvenience of a multiplicity of suits.

53. Plaintiffs seek injunctive relief, enjoining Ocwen from engaging in such practices, including violating loan modification agreements.

54. Plaintiffs have no adequate remedy at law for the injunctive relief requested. By reason of the foregoing, Plaintiffs and Class members have been irreparably harmed and are entitled to injunctive relief as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter an order of judgment against Ocwen, including the following:

A. Certify this case as a class action under the appropriate provisions of Rule 23, and appoint Plaintiffs as Class Representative and their counsel of record as Class Counsel;

B. Enter a judgment declaring the acts and practices of Ocwen complained of herein to constitute a breach of contract, as well as a declaration that they are required by the doctrine of promissory estoppel to offer permanent loan modifications of mortgages to Class members;

C. Grant injunctive relief against Ocwen as this Court deems necessary and proper

including entering a permanent and final injunction enjoining Ocwen from continuing the impermissible business practices complained of herein;

D.  Order Ocwen to adopt and enforce a policy that requires appropriate training of its employees and agents regarding proper duties pertaining to carrying out loan modification agreements;

E.  Order specific performance of Ocwen's contractual obligations, together with other relief required by contract and law;

F.  Award damages sustained by Plaintiffs and the Class as a result of Ocwen's unlawful acts and conduct;

G.  Award pre- and post-judgment interest on such monetary relief;

H.  Award Plaintiffs the costs of bringing this suit, as well as reasonable attorneys' fees; and

I.  Grant all other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury.

-15-

DATED: March 10, 2011  DAVID P. MEYER & ASSOCIATES CO., LPA

*/s/ signature/*

DAVID P. MEYER (0065205)
Email: dmeyer@dmlaws.com
MATTHEW R. WILSON (0072925)
Email: mwilson@dmlaws.com
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

MELANIE MILLS (0062207)
Email: melanie@mmillslawoffice.com
The Law Offices of Melanie Mills, L.P.A.
8390 Gilmerton Court
Dublin, Ohio 43017
Telephone: 614/763-3599
614/718-2270 (fax)

Attorneys for Plaintiffs and the Putative Class